IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HITOSHI OMBE,

        Plaintiff,

v.

SUSANA MARTINEZ, *et al.*,

        Defendants.

No. 14-CV-00763 RB/KBM
No. 14-CV-00856 RB/KBM
No. 14-CV-00857 RB/KBM
(consolidated)

MEMORANDUM OPINION AND ORDER

Alleging claims under federal law, Plaintiff Hitoshi Ombe sued Defendants, including several state agencies, state employees, and non-profit employees.  In two motions, the state agencies and employees ("State Defendants") move to dismiss all of Plaintiff's claims against them.  (Docs. 28, 29.)  Having reviewed the parties' submissions and the relevant law, the Court **DENIES** in part and **GRANTS** in part State Defendants' First Motion to Dismiss (Doc. 28) and **GRANTS** State Defendants' Second Motion to Dismiss (Doc. 29).

I.      **BACKGROUND**

Plaintiff suffers from Asperger's disorder, a mood disorder, and mild neurocognitive problems.  (Am. Compl. ¶¶ 6, 9-10.)  Based on these disabilities, Plaintiff applied for services offered by the New Mexico Division of Vocational Rehabilitation ("DVR"), a government program meant to increase the economic independence of persons with disabilities through employment.  (Am. Compl. ¶ 111A; Doc. 29 at 2.)  When Plaintiff applied for services on February 21, 2011, he was unemployed.  (Am. Compl. ¶ 111A; Ombe Aff. ¶ 305.)

In April of 2011, Plaintiff obtained a job as a gas station cashier without the assistance of DVR.  (Am. Compl. ¶ 17; Doc. 86.)  However, Plaintiff continued to meet with DVR employees in hopes of finding a different job, one more suited to his skills and interests.  (Am. Compl. ¶¶ 74; Ombe Aff. ¶¶ 201-208.)  Due to his disability, Plaintiff struggled to understand the processes and practices of DVR, and he became increasingly dissatisfied with his DVR experience.

Plaintiff complains that State Defendants "failed to communicate clearly to the plaintiff by ignoring his specific needs."  (Am. Compl. ¶ 47.)  Specifically, Plaintiff alleges that the State Defendants' "communication styles were inconsistent with the plaintiff['s] Asberger's brain [and] with English as a second language."  (*Id.* ¶ 49.)  For example, Plaintiff describes how an unspecified defendant's use of the term "benefits" was perplexing.  (*Id.*)  He laments that DVR "has a special flavor of language and it has been very difficult for the plaintiff to fully understand it and retain it."  (*Id.* ¶ 58.)  Plaintiff reasons that the defendants should have "knowledge and understanding" of his disabilities "by virtue of [the] positions they hold" at DVR.  (*Id.* ¶ 48.)

While working with DVR, Plaintiff was assigned three vocational rehabilitation counselors, all of whom Plaintiff found unsatisfactory.  (*Id.* ¶¶ 60, 79, 96.)  Plaintiff criticizes his first DVR counselor, Defendant Gary Lucas, for being "dishonest" and "mislead[ing]" because he recorded Plaintiff's employment goal as "cashier."  (*Id.* ¶¶ 60-68.)  Plaintiff's second DVR counselor, Defendant Carol Day, offended Plaintiff when she "mentioned her intention to retire . . . knowing she is younger than the plaintiff."  (*Id.* ¶ 76.)  He further posits that a case note written by Ms. Day "shows some racism like thought."  (*Id.* ¶ 85.)  Eventually, Plaintiff's case was reassigned to Defendant Tanya Shatz, who Plaintiff says "refused without much explanation" his request to "speed up the process because of [his] age." (*Id.* ¶ 99.)

2

Plaintiff was also dissatisfied with DVR's supervision.  In general, Plaintiff complains that DVR supervisors Terri Douglass, Susan Lopez, Lee Martinez, Martha Jaramillo, and Patricia Gulino ignored his requests and scheduling needs.  (*Id.* ¶¶ 75, 84.)  Additionally, Plaintiff alleges that Governor Susana Martinez, Secretary of Public Education Hanna Skandera, and DVR Director Ralph Vigil failed to properly oversee DVR's operations.  (*Id.* ¶¶ 23- 26.)

Plaintiff pursued several challenges to DVR's services.  On July 5, 2013, Plaintiff filed a complaint against DVR with the United States Department of Education, Office of Civil Rights. (*Id.* ¶ 101.)  In November 2013, the Office of Civil Rights conducted a telephonic mediation with Plaintiff and DVR.  (*Id.* ¶ 102.)  Plaintiff complains that "[t]his was a very discriminatory arrangement."  (*Id.*)  He accuses Defendant Rosa Lima, a DVR attorney, of "destroy[ing]" the mediation by interrupting Plaintiff's argument with questions.  (*Id.*; Ombe Aff. ¶¶ 611-612.) Defendant John Fullinwider, DVR field operations director, showed Plaintiff a proposed settlement agreement, but Plaintiff felt the agreement "evaded the issue."  (Am. Compl. ¶¶ 29, 71.)  Defendant Fullinwider then allegedly "abandoned a settlement process."  (*Id.* ¶ 104.) Shortly thereafter, the Office for Civil Rights dismissed Plaintiff's complaint.  (*Id.* ¶ 103.)  To protest the abandonment, Plaintiff contacted DVR employee Defendant Richard Smith to discuss his case.  (*Id.* ¶107.)  Although their conversation lasted approximately two hours, Plaintiff claims that the information provided by Mr. Smith "was wrong."  (*Id.* ¶107.)

On March 13, 2014, Plaintiff requested a fair hearing with DVR to discuss his damages. (*Id.* ¶ 108.)  Two weeks before the hearing, DVR closed Plaintiff's case and cancelled the hearing.  (*Id.* ¶ 109.)  Notice of the closure was sent via letter, which Plaintiff had difficulty understanding due to his disability and because English is his second language.  (*Id.*)  Plaintiff requested a second fair hearing to discuss this closure.  (*Id.* ¶ 110.)  However, on June 6, 2014,

Plaintiff withdrew this second request upon learning that the hearing officer, Defendant Ernest Pacheco, intended to hold the pre-hearing conference telephonically rather than in person. (*Id.* ¶ 111.) Plaintiff believed a telephonic pre-hearing conference would be discriminatory "because of the plaintiff['s] disability and national origin." (*Id.*)

Plaintiff filed a Complaint with this Court on October 31, 2014. (Doc. 1.) In a previous Memorandum Opinion and Order, the Court dismissed Plaintiff's Age Discrimination Act claim for failure to exhaust administrative remedies. (Doc. 83 at 1.) Now, State Defendants move to dismiss Plaintiff's remaining claims for failure to state a claim and under sovereign immunity. (Docs. 28, 29.) Plaintiff has not responded to either motion to dismiss.

## II.    LEGAL STANDARD

Defendants challenge Plaintiff's Amended Complaint on plausibility and immunity grounds. On a Rule 12(b)(6) motion, the court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The Court reviews Defendants' sovereign immunity challenges under a similar standard to that of a 12(b)(6) motion to dismiss. *See Muscogee (Creek) Nation v. Oklahoma Tax Com'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (explaining that the standard used for facial challenges under Rule 12(b)(1) motions mirrors the standard used to review Rule 12(b)(6) motions). To survive a motion to dismiss, a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible of its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pro se litigant is held to the same legal standard as a lawyer; however, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1006, 1110 (10th Cir. 1991).

III.    DISCUSSION

Plaintiff asserts five remaining causes of action,[1] including claims under (1) the Fourteenth Amendment, (2) Section 1981, (3) the Americans with Disabilities Act, (4) the Rehabilitation Act, and (5) Title VI.  (Am. Compl. ¶¶ 115-130.)

### A.  Money Damages Under 42 U.S.C. § 1983

Plaintiff brings his constitutional claims and Section 1981 claim through the vehicle of 42 U.S.C. § 1983.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 702 (1989) (explaining that Section 1981 rights can only be vindicated through Section 1983).  State Defendants argue that, as agencies and agents of the State of New Mexico, they are not "persons" for the purposes of Section 1983.  (Doc. 29.)  A state, its agencies, and employees are not persons "against whom a § 1983 claim for money damages might be asserted."  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002).

The Court agrees that State Defendants are arms of the state and, thus, not "persons" within the meaning of Section 1983.  Under New Mexico law, the Department of Public Education functions as "the state board of education and the state department of public education."  N.M. Stat. Ann. § 9-24-2.  This department is an arm of the state.  Similarly, DVR is an "agency of the state."  N.M. Stat. Ann. § 22-14-2(B).  Accordingly, Plaintiff's Section 1981 claim, Section 1983 claim, and Fourteenth Amendment claims against the State of New Mexico, the Department of Public Education, and DVR are dismissed.

Furthermore, employees of state agencies are also not "persons" for the purposes of Section 1983.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").  Thus,

---

[1] Plaintiff made an additional claim under Section 1983.  However, Section 1983 is only a vehicle: it does not provide substantive relief of its own.  *Gallegos v. City of Denver*, 984 F.2d 358, 362 (10th Cir. 1993).

Plaintiff cannot seek money damages against the State Defendants with his Section 1983 claims. However, Plaintiff may seek prospective injunctive relief against the individual State Defendants in their official capacities.  *See id.* at 71 n.10 (explaining that official-capacity defendants are persons under Section 1983 when sued for prospective, injunctive relief).

In his Amended Complaint, Plaintiff asks the Court to "make the case as if everything would have gone properly."  (Am. Compl. ¶ 132.)  Construing this pro se pleading liberally, the Court considers this a request to reopen Plaintiff's case and hold a fair hearing.  Such a request states a viable request for prospective, injunctive relief.  Therefore, the Court will consider Plaintiff's request for injunctive relief based on State Defendants' alleged violations of the Fourteenth Amendment and Section 1981.  *See Will*, 491 U.S. at 71 n. 10; *Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1198 (10th Cir. 1998) (finding that the *Ex Parte Young* exception can apply to Section 1981 claims).

### B.  Injunctive Relief Under Fourteenth Amendment

Plaintiff claims that State Defendants violated his Fourteenth Amendment rights to substantive due process, procedural due process, and equal protection under the law.  State Defendants ask the Court to dismiss all three claims.  (Doc. 28.)

#### 1.  Substantive Due Process

A plaintiff's right to substantive due process is violated when government action either (1) infringes upon a fundamental right or (2) shocks the conscience.  *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008).  Fundamental rights are either enumerated in the Bill of Rights or are so "deeply rooted in this Nation's history and tradition . . . such that neither liberty nor justice would exist if they were sacrificed."  *Washington v. Glucksberg*, 521 U.S. 702, 720-

21 (1997).   Given that Plaintiff does not identify any fundamental rights that Defendants violated, the Court next inquires whether Plaintiff's alleged facts shock the conscience.

The "conscience shocking" standard sets a high bar, only encompassing "the most egregious official conduct." *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (internal citations and quotations omitted).   "[N]egligence is not sufficient" to shock the conscience of the court; indeed, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006)).

Plaintiff's allegations do not rise to the level of conscious-shocking behavior.   While Plaintiff asserts that DVR employees did not adequately communicate with him and failed to help him find alternative employment, these disappointments do not constitute "egregious official conduct." *Williams*, 519 F.3d at 1220.   Even if true, these allegations suggest that the DVR employees were negligent, not egregious.   Alleged negligence cannot form the basis of a substantive due process claim. *Camuglia*, 448 F.3d at 1222.   Therefore, the Court dismisses Plaintiff's substantive due process claim against all State Defendants.

### 2.   *Procedural Due Process*

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Kowalczyk v. I.N.S.*, 245 F.3d 1143, 1147 (10th Cir. 2001) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (internal quotations omitted).   To determine if an individual was denied procedural due process, courts inquire: (1) did the individual possess a protected interest? and (2) was the individual afforded an appropriate level of process? *Brown*, 662 F.3d at 1167 (internal citations and quotations omitted).

Even if Plaintiff had a property interest in DVR benefits, a point which State Defendants deny, Plaintiff was afforded an appropriate level of process.  Plaintiff admits that he accessed several processes: he attended multiple meetings with DVR employees and DVR supervisors, participated in a mediation overseen by the Office of Civil Rights, and requested two separate fair hearings to address his concerns with DVR services.  (Am. Compl. ¶¶ 88, 102, 105, 108, 110.)  Although Plaintiff complains that DVR closed his case (*id.* ¶ 109), DVR has statutory authority to close its cases without the client's consent.  N.M. Admin. Code § 6.100.2.43(A).  A DVR closure decision must be explained in writing and state:

(1) The reasons for the case closure;
(2) The rights and remedies available to the individual, including, as appropriate, recourse to the impartial hearing process; and
(3) The availability of services provided by the client assistance program.

N.M. Admin. Code § 6.100.2.44(B)(1)-(3).  Plaintiff admits he received this notification.  (Am. Compl. ¶ 109.)

Subsequently, Plaintiff filed a second request for a fair hearing to contest the closure of his case, but later voluntarily withdrew his request after learning that the pre-hearing conference would be held telephonically.  (*Id.* ¶ 111.)  A plaintiff's decision to not utilize a procedure cannot form the basis of a procedural due process claim—to meet the demands of due process, the government must only provide adequate notice and an opportunity to meaningfully participate. *Kowalczyk*, 245 F.3d at 1147 (explaining that due process only requires *the opportunity* to be heard at a meaningful time and in a meaningful manner).

Nor does due process compel a particular format for a hearing; the demands of due process can be met through informal hearings.  *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 16 n.17 (1978) ("The opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a 'due process hearing' in

appropriate circumstances." (citing *Goss v. Lopez*, 419 U.S. 565, 581-584 (1975))).  Given this, although Plaintiff objected to telephonic hearings, the Court cannot say that holding a telephonic pre-hearing conference violated Plaintiff's due process rights.

In sum, DVR provided Plaintiff with sufficient process.  Before Plaintiff's case was closed, he had several meetings with DVR supervisors and participated in mediation.  (Am. Compl. ¶¶ 69, 70, 71, 75, 79, 84, 86, 90, 102.)  These meetings represent part of the pre-deprivation due process framework.  *See Craft*, 436 U.S. at 16 n.17 (1978) (explaining that meetings with "designated personnel empowered to correct a mistaken determination" can provide due process).  After Plaintiff's case was closed, he was offered the opportunity to have a post-deprivation fair hearing.  Based on the process that was available to Plaintiff, State Defendants' Motion to Dismiss Plaintiff's procedural due process claim is granted.

### 3. *Equal Protection Claim*

Plaintiff also claims that his right to equal protection under the law was violated "because of disability, race, national origin, ethnic background, and/or age or a combination of these." (Am. Compl. ¶ 116.)  "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination . . . ."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citations and quotations omitted).  To state a viable Equal Protection claim, a plaintiff must show that he is a member of a protected class and that the government treats him differently from similarly situated individuals who are not in that class.  *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998).  Additionally, the plaintiff "has the burden of demonstrating discriminatory intent."  *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1130 (10th Cir. 1993).  "[M]ere

negligence or mistake resulting in uneven application of the law is not an equal protection violation." *Roe v. Keady*, 329 F.3d 1188, 1191-92 (10th Cir. 2003).

Plaintiff alleges he was treated differently than other individuals because he was unable to participate in DVR's services and fair hearing processes due to his disability and national origin. Because of his disability and status as an English language learner, Plaintiff could not understand DVR's various communications and could not adequately participate in the conversations. (Am. Compl. ¶¶ 49- 50.) Plaintiff argues that State Defendants should have "knowledge and understanding" of his disabilities "by virtue of [the] positions they hold" at DVR. (Am. Compl. ¶ 48.) This allegation, if true, does not allege that Defendants had a discriminatory intent. Rather, it shows that Defendants were negligent. That is insufficient to support an equal protection claim. *See Roe*, 329 F.3d at 1191-92 (explaining that a viable equal protection claim requires more than negligence).

Plaintiff asserts that one of Defendant Day's case notes revealed "racism like thought." (Am. Compl. ¶ 85.) Plaintiff does not allege why this case note was racist, explain how this case note was related to Defendants' actions, or offer any explanation why this case note caused him injury. This case note alone, unconnected to any particular injurious action against Plaintiff, is insufficient to uphold a constitutional claim. *See Sauers*, 1 F.3d at 1130 (explaining that a plaintiff must prove that discriminatory intent was a motiving factor of a challenged action). All State Defendants are entitled to summary judgment on this claim.

### C. Injunctive Relief Under 42 U.S.C. § 1981

In his Third Cause of Action, Plaintiff claims State Defendants violated his rights under Section 1981 of the Civil Rights Act because of disability, race, and national origin. (Am. Compl. at ¶ 120.) Section 1981 provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right
> in every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

42 U.S.C. § 1981(a).

Plaintiff's allegations do not state a claim.  Again, Plaintiff alleges that Defendant Day wrote a "racism like" case note, but does not explain how the case note or Defendant Day deprived Plaintiff of his Section 1981 rights.  (Am. Compl. ¶ 85.)  Consequently, Plaintiff did not satisfy the pleading requirements of his Section 1981 claim.  Plaintiff did not demonstrate a claim to injunctive relief under the *Ex Parte Young* doctrine. Thus, Plaintiff's Section 1981 is dismissed in full.

### D.  Title VI Claim

In his Sixth Cause of Action, Plaintiff brings a Title VI claim against State Defendants. State Defendants seek dismissal of this claim, positing that (1) Plaintiff cannot sue individually-named Defendants for money damages under Title VI, and (2) Plaintiff failed to state a claim. (Doc. 28 at 22.)  "[T]he text of Title VI . . . precludes liability against those who do not receive federal funding, including individuals."  *Shotz v. City of Plantation*, 344 F.3d 1161, 1170 (11th Cir. 2003); *Silva v. St. Anne Catholic School*, 595 F. Supp. 2d 1171, 1179 (D. Kan. 2009) (explaining same).  Accordingly, Plaintiff cannot sue any of the individually-named State Defendants for relief under Title VI.

Title VI of the Civil Rights Act provides that, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Importantly, Title VI "prohibits only intentional

discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).  Plaintiff's Amended Complaint did not allege that State Defendants intentionally discriminated against him because of race, color, or national origin.  While Plaintiff concluded that Defendant Day showed "racism like thought" (Am. Compl. ¶¶ 80-85), individuals cannot be sued under the Act.  Plaintiff did not connect this case note to any of DVR's decisions or actions.  And though Plaintiff alleges that State Defendants should have known how to communicate with him better, these allegations state a claim of negligence, not intentional discrimination.  Consequently, Plaintiff's pleadings do not state a plausible Title VI claim.

### E.  Americans With Disabilities Act and Rehabilitation Act Claims

In his Amended Complaint, Plaintiff alleges that State Defendants violated the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act.  (Am. Compl. at ¶¶ 121-24.)  Both acts aim to eradicate discrimination on the basis of disability and courts generally construe the two acts together.  *See Bragdon v. Abbott*, 524 U.S. 624, 625 (1998) ("[T]his Court must construe the ADA to grant at least as much protection as the regulations implementing the Rehabilitation Act.").  Because State Defendants offer government programs, the Court considers Plaintiff's claim under Title II of the ADA.  Defendants do not invoke sovereign immunity for these claims.

State Defendants argue that they cannot be sued in their individual capacities under the ADA or the Rehabilitation Act.  (Doc. 28 at 13, 23.)  Indeed, these claims cannot be maintained against individual defendants.  *Lewis v. New Mexico Dep't of Health*, 94 F. Supp. 2d 1217, 1230 (D.N.M. 2000), *aff'd*, 261 F.3d 970 (10th Cir. 2001).  The Court dismisses Plaintiff's claims against the individual State Defendants under the ADA and the Rehabilitation Act.

To state a claim of disability discrimination, a plaintiff must allege "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007); *see also Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (stating similar requirements for a discrimination claim under the Rehabilitation Act). Importantly, the ADA does not impose a "standard of care" requirement. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999).

Plaintiff's allegations do not state a claim for direct, intentional discrimination. In a similar case, the Tenth Circuit concluded that a plaintiff failed to state a claim under Title II of the ADA when she "was found eligible for DVR services[] and DVR personnel worked with her on her employment goals" but did not produce the "ultimate outcome she desired." *Meyers v. Colorado Dep't of Human Servs.*, 62 F. Appx. 831, 833 (10th Cir. 2003) (unpublished). The plaintiff in *Meyers* disagreed with the Colorado DVR's assessment of her abilities. *Id.* Ultimately, the Tenth Circuit found that the disagreement between the plaintiff and Colorado DVR employees about her assessment and employment options did not constitute intentional discrimination. *Id.*

Here, Plaintiff's experience at New Mexico DVR was similar to the plaintiff's in *Meyers*: Plaintiff was found eligible for services, he received services, and he was ultimately disappointed by the outcome of those services. (Am. Compl.) Plaintiff does not allege that he was *denied* services on the basis of his disability; rather, he merely complains that the services he received did not meet his expectations. As established above, the ADA and Rehabilitation Act only prevent discrimination; they do not compel a particular outcome or set a quality standard. *See*

*Olmstead*, 527 U.S. at 603 n.14 (holding that the ADA does not impose a "standard of care" requirement); *Baumeister v. N.M. Comm'n for the Blind*, 425 F. Supp. 2d 1250, 1265-67 (D.N.M. 2006) (holding that the nondiscrimination clause of the Rehabilitation Act does not create a quality of care standard). However, service providers can discriminate against individuals with disabilities in other ways.

The failure to reasonably accommodate a person's disability constitutes discrimination. *See* ADA Title II regulation, 28 C.F.R. § 35.130(b)(7) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . . ."); Rehabilitation Act regulation, 28 C.F.R. § 41.53 ("A recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee . . . ."). Service providers must provide "meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). Moreover, "to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Id.*

Plaintiff's Amended Complaint shows that he requested and was denied seemingly reasonable accommodations. Specifically, Plaintiff avers that he "needs more straightforward and organized language because of Asperger's." (Am. Compl. ¶¶ 58, 87.) Because of his mental condition, Plaintiff requested "basic communication" by e-mail or fax. (*Id.* ¶ 75.) He states that DVR consistently failed to honor this request. (*Id.*) Separately, during the mediation process, Plaintiff struggled with the telephonic hearing and found the arrangement "discriminatory." (*Id.* ¶ 102.) For his second fair hearing, Plaintiff specifically requested that all hearings be in person and not over the phone. (*Id.* ¶ 111.) Despite his request, a prehearing conference was held

telephonically.  (*Id.*)  Either of these incidents could represent a failure to provide a reasonable accommodation for Plaintiff's disability.  These allegations must survive a motion to dismiss.

Plaintiff stated two plausible failure-to-accommodate claims.  Plaintiff brings the failure to communicate claim against Defendant DVR.  The Court is less certain which public entity was responsible for providing accommodations for the fair hearing.  For that reason, all three public entity defendants will remain in the suit for now, including Defendant DVR, Defendant State of New Mexico, and Defendant Department of Public Education.

### F.  Plaintiff's Requests for Declaratory Relief

Plaintiff requests various declaratory remedies.  The Federal Declaratory Judgment Act does not create any new substantive legal rights, but only offers a procedure and a remedy. *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989); *see also Mashunkashey v. United States*, 131 F.2d 288, 290 (10th Cir. 1942) ("[T]he declaratory judgment act creates no new rights.").  "[I]n the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant."  *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011).  Examining the facts as alleged in Plaintiff's Amended Complaint, the Court determines that all requested declaratory relief is improper because it would only serve to retrospectively vindicate perceived past wrongs.  *See id.* Plaintiff's requests for declaratory judgment do not clarify or settle the legal issues in the suit. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (explaining considerations for deciding to hear claims for declaratory judgment); *Am. Gen. Life Ins. v. Bagley*, No. 2:13-CV-00089-RJS, 2013 WL 5916824, at *5 (D. Utah Nov. 4, 2013) (holding that a district court can dismiss a redundant claim for declaratory relief).  The Court declines to hear Plaintiff's claims for declaratory relief.

## IV.     CONCLUSION

Plaintiff alleges that DVR, it employees, and supervisors violated his rights.  Because the State Defendants are not persons within the meaning of Section 1983, Plaintiff cannot sue them for monetary damages under this statute.  Additionally, the Court found that Plaintiff cannot seek injunctive relief for these claims because he did not state a plausible claim under the Fourteenth Amendment or under Section 1981.   Likewise, Plaintiff's Title VI claim is dismissed for pleading deficiencies.  In contrast, Plaintiff did state a plausible failure-to-accommodate claim against the public entity State Defendants.  Therefore the Court denies State Defendants' motion to dismiss the ADA and Rehabilitation Act causes of action.   Finally, the Court dismissed Plaintiff's request for declaratory relief against State Defendants, as such relief would be improper under the facts of the case.

**THEREFORE,**

**IT IS ORDERED** that:

(1) Defendants' First Motion to Dismiss Civil Rights and Discrimination Claims for Failure to State a Claim and Based Upon Qualified Immunity (Doc. 28) is **DENIED** in part and **GRANTED** in part;

(2) Defendants' Second Motion to Dismiss Claims Against Agency and Supervisory Defendants, Official Capacity Claims, Section 1981 Claims, Claims for Monetary Damages Under Age Discrimination Act, Claims for Declaratory Relief and State Law Claims (Doc. 29) is **GRANTED**; and

(3) Defendants Governor Susana Martinez, Secretary Hanna Skandera, Ralph Vigil, Rosa Lima, Richard Smith, John Fullinwider, Terri Douglass, Adrian Apodaca, Susan Lopez, Reyes R. Gonzales, Ava Gutierrez, Ernest Pacheco, Lee Martinez, Carol Day, Tanya Shatz, Martha V. Jaramillo, and Patricia Gulino are **DISMISSED**.

**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE